# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,                                    CR: 05-262 (MJD/SRN

       Plaintiff,

   v.                                                   **REPORT AND**
                                                  **RECOMMENDATION**

Steven Patrick Koenen,

       Defendants.
_____

Chris Wilton, Assistant U.S. Attorney, on behalf of Plaintiff.

Andrew H. Mohring, Esq., and Manny K. Atwal, Esq., on behalf of Defendant
_____

SUSAN RICHARD NELSON, United States Magistrate Judge

      The above entitled matter came before the undersigned United States Magistrate Judge on October 13, 2005, and on October 17, 2005, on the Defendant Steven Patrick Koenen's following pretrial motions:  Motion to Suppress July 8 and July 22, 2005 Statements, Admissions, and Answers (Doc. No. 33); Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 35); and Motion to Dismiss Counts I - III for Lack of Nexus with Interstate Commerce.[1]

This matter is set to be tried before the Honorable Michael J. Davis, United States District Court Judge for the District of Minnesota, on January 4, 2006.  This case has been referred to the undersigned for

---

[1] The Parties's non-dispositive motions (Doc. Nos. 14-16, 19-21, 23, 25, 27-28, 30, 32, and 37) are addressed in a separate Order.

resolution of pretrial matters pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons set forth below, this Court recommends that Defendant's motions to suppress statements (Doc. No. 33), to suppress evidence (Doc. No. 35), and to dismiss Counts I - III (Doc. No. 36) all be denied.

## I.   PROCEDURAL HISTORY

On August 17, 2005, an eight count indictment was filed charging Defendant Koenen with three counts of Production of Child Pornography in violation of Title 18 U.S.C. §§ 2251(b) and 2251(e), four counts of Distribution of Child Pornography in violation of Title 18 U.S.C. §§ 2252(a)(1), 2252A(a)(1), 2252(b)(1), and 2252A(b)(1), and one count of Possession of Child Pornography in violation of Title 18 U.S.C. §§ 2252(a)(4)(B) and 2252(b)(2).  (See Indictment, (Doc. No. 12)).  The Government also brought forfeiture allegations against Defendant Koenen pursuant to Title 18 U.S.C. § 2253(a).  (Id.).

At the criminal motions hearing, Defendant was present and represented by counsel.  FBI Special Agents Maureen Lese and Geoff Stankevitz, and Robbinsdale Investigator Mark Johnson, testified on behalf of the Government.  Government Exhibits 1 through 3, and Defendant's Exhibits 1, and 5 through 7, were received into evidence.  (See Exhibit List, Gov. Ex. 1, Search Warrant, Receipt of Property, List of Items to be Seized; Gov. Ex. 2, Application and Supporting Affidavit for Search Warrant; Gov. Ex. 3, Transcript of July 8, 2005 Interview with Defendant; Def. Ex. 1, Special Agent Lese July 8, 2005 Interview Report; Def. Ex. 5, Special Agent Lese's Diagram of Interview Room; Def. Ex. 6, Investigator Johnson's Diagram of Interview Room; Def. Ex. 7, Special Agent Lese July 15, 2005, Interview Report).

Defendant moves to suppress the statements he made during interviews on July 8, 2005 and July 22, 2005 (Doc. No. 33), to suppress evidence seized pursuant to a search warrant (Doc. No. 35), and

to dismiss Counts I through III of the indictment (Doc. No. 36).

## II.  FINDINGS OF FACT

Special Agent Maureen Lese ("Special Agent Lese") of the Federal Bureau of Investigation ("FBI") testified for the Government at the criminal motions hearing.  Special Agent Lese has worked with the FBI for over 13 years.  (Test. of Special Agent Lese, October 13, 2005 ("Lese Test."); Gov. Ex. 2, Search Warrant Application and Supporting Affidavit ("Gov. Ex 2")).  At the time of the criminal motions hearing, Special Agent Lese was assigned to the Cyber Crime  Squad and had been the Crimes Against Children Coordinator for the Minneapolis Office of the FBI for almost five years.   Her assignments included investigating cases of sexual exploitation of children especially as it relates to the internet.  She had conducted hundreds of investigations, conducted numerous searches, made arrests, and received more than 200 hours of training in computer crime investigation.  Special Agent Lese was familiar with Defendant Koenen through her role as the case agent for this case.

**The Search Warrant**

On July 7, 2005, Special Agent Lese submitted an application and supporting affidavit for a search warrant for an address on Grimes Avenue N., in Robbinsdale, Minnesota ("Grimes address" or "Grimes residence").  (Gov. Ex. 2).  The purpose was to search for and seize instrumentalities, fruits, and evidence of violation of Title 18 U.S.C. §§ 2252 and 2252A, which criminalize, among other things, the possession, receipt, and distribution of child pornography and other related materials.

The search warrant was issued on July 7, 2005.  (Gov. Ex. 1).  On July 8, 2005, Special Agent Lese noticed a typographical error on the cover sheets of the search warrant and the application for the search warrant as to the numerical address of the Grimes residence.  The numerical address of the

targeted Grimes residence was off by one number on the search warrant and the application for the

search warrant.  The correct target address, however, was included throughout the supporting affidavit

to the search warrant application.  (See Gov. Ex. 2, ¶¶ 2, 18, 20, 21(a), (b), and (c)).  The correct

address along with a description of the premises to be searched was also included in the supporting

affidavit.  (See Gov. Ex. 2, ¶ 27).  Upon realizing the mistake, Special Agent Lese discussed the error

with the Magistrate Judge who had signed the search warrant, and swore under oath the correct target

address.  The police forces that executed the search warrant were briefed on the correct target address

using photos that matched the description included in the supporting affidavit.  The search warrant was

executed on July 8, 2005, on the intended correct target Grimes Ave. address.  The correct address

was also listed in the receipt for property received.  (Gov. Ex. 1).

　　　The supporting affidavit to the search warrant application provided definitions, a background on

computers and child pornography, as well as relevant information relating to Usenet discussion forum,

Newsgroups, and Network News Transfer Protocols (NNTP). (Gov. Ex. 2).  The affidavit also set

forth the facts related to the investigation.

　　　On April 21, 2005, Special Agent Bryan Spano conducted an investigation of the transmission

of child pornography via Internet newsgroups.  While acting in an undercover capacity, Special Agent

Spano entered a newsgroup titled "alt.binaries.pictures.erotica.ll-series".  Special Agent Spano noted

that an individual listed as "sskoe@icgmail.com" had posted 39 still images between March 30, 2005

and April 17, 2005, in that newsgroup.  Special Agent Spano saved the posted files to a CD-Rom.

Special Agent Lese reviewed the files and opined that at least 32 of the images depicted child

pornography.  Four of the images were described in the supporting affidavit, along with their associated

file names.

Special Agent Spano determined that the individual who had posted the 39 images was using a service called Newsreader.com to access to the NNTP server.  An administrative subpoena was served on Newsreader.com to determine the identity of the individual who had purchased the software program which enabled access the NNTP server.  The returned information indicated that an individual providing the email address of sskoe112@hotmail.com had established the account with Newsreader.com in the name of "Riker" with a password of "LOVEMYOUNG".  The account was created using a MasterCard number on February 16, 2005, at 10:02 EST, from a computer assigned the IP address of 63.225.147.169.  A history log for the IP address was provided and showed access to the account a number of times between March 20, 2005 and May 5, 2005.  Other IP addresses were also listed, which indicated that the subject was connecting to the newsgroup from different locations as well as via web access, such as from a computer with Internet access.

The American Registry for Internet Numbers (ARIN) indicated that the relevant IP address was registered to Qwest.  An administrative subpoena on Qwest Communications International, Inc. revealed that on the requested times on May 4 and 5, 2005, the relevant IP address was assigned to Qwest DSL subscribers Steven and Jamie Koenen at the target Grimes Ave. address in Robbinsdale, Minnesota.  Qwest also provided a phone number associated with the account.

An administrative subpoena was issued to Hotmail.com requesting information regarding the sskoe112@hotmail.com email address.  Registration information revealed that the user name was entered as a Steven Koenen located in Minnesota.  Hotmail provided log information for the account which revealed that 32 of the 34 most recent IP logins were consistent with the Qwest IP address from

the Newsreaders.com's logs.

A federal grand jury subpoena was served on MBNA to determine the account holder on the revealed MasterCard number.  Information revealed that the MasterCard account belonged to a Steven P. Koenen with a listed address as the target Grimes Ave. N. address.  MBNA reported that the account was active, had not been reported as lost or stolen, and that there had been no alert to fraudulent activity associated with the account.  Statements from February 16, 2005,  matched the information received from Newsreader.com as to when the Riker /sskoe@icgmail.com account was created.

A check showed that Steven P. Koenen had a drivers license for Steven Patrick Koenen, date of birth April 6, 1961, and a listed address as the target Grimes Ave. address.  The U.S. Postal service confirmed that Steven Koenen was receiving mail at the target Grimes Ave. address.  ChoicePoint, a public information database, indicated that a Steven P. Koenen, with a date of birth April 6, 1961, had been associated with the target Grimes Ave. address since March, 1995.  That address was also listed as his most current address.  The telephone associated with that address was the same number provided by Qwest as being associated with Steven and Jamie Koenen and the IP address.

In the affidavit, Special Agent Lese also stated that, based on her training and experience,  and consultations with other federal agents, she was aware that the following things were generally true in cases involving individuals who collect child pornography: the majority of people who collect child pornography collect sexually explicit materials, consisting of photographs, magazines, motion pictures, videotapes, books, slides, computer graphics or digital or other images for their own sexual gratification; these materials are highly valuable to these individuals both economically and psychologically, and are

rarely disposed of; this material is often kept in their homes; such material is generally stored in electronic form as computer files; the majority of individuals who collect child pornography seek out other like-minded people, either in person or on the Internet; the majority of such individuals often collect, read, copy or maintain, names, addresses, phone numbers or lists of other people, in telephone books, notebooks, computer storage devices, or just scraps of paper.

Considering this information, Special Agent Lese opined that there was probable cause to believe that an individual who resides at the target Grimes address was involved in transmitting child pornography and had violated Title 18 U.S.C. §§ 2252 and 2252A.  In addition, there was probable cause to believe that evidence, fruits and instrumentalities of this crime, would be found at the stated location.  The specific items subject to the search and seizure were described in an attachment to the application.  (Attachment A to Ex. 2).  Special Agent Lese requested permission be granted to seize computer hardware, software, electronic files, access devices, and other items described in Attachment A and take them off-site for investigation.  She explained that, as a computer was used to acquire, possess and/or transmit child pornography, such a seizure and search was necessary due to the volume of evidence computers can store and their technical requirements.

The search warrant was executed on July 8, 2005, around 8:00 a.m.  (Gov. Ex. 1).  Defendant Koenen was not present at the time, but his wife was.  During the execution, officers recovered computers, electronic storage devices, cameras, and other related items.


**Defendant Koenen's July 8, 2005 Interview with Special Agents Lese and Stankevitz**

On July 8, 2005, at 6:15 a.m., Special Agent Lese was conducting surveillance of the target

Grimes Ave. address in anticipation of executing the search warrant. She noticed a vehicle leave the residence and followed the vehicle to the parking lot of Undercar Services in Eden Prairie, Defendant Koenen's place of work. In the parking lot, Special Agent observed Defendant Koenen get out of his car and look at her. Special Agent Lese testified that she waved to Defendant Koenen and he appeared to acknowledge her. He walked to the back door of the Undercar building and stood by the door of the building. Special Agent Lese stated that she approached the Defendant, identified herself as an FBI Agent, and asked to speak to Defendant Koenen. Defendant agreed to speak to her and invited her into the building. Special Agent Lese walked back to her car to retrieve her briefcase. As she returned to her car, her partner, Special Agent Geoff Stankevitz, arrived. Defendant Koenen was still waiting by the door of the building when both Special Agents Lese and Stankevitz joined him. The agents followed Defendant Koenen into the building, through a small hallway, and into what appeared to be a break room.

Special Agent Lese testified that the break room was about 15 feet by 20 feet and contained a table, chairs, at least one window, and a refrigerator, among other things. The door to the break room was solid. The Special Agents and Defendant Koenen sat around the table with the Defendant at the opposite side of the table facing the door. (See Def. Ex. 5). Both Special Agents Lese and Stankevitz were dressed in casual clothes. They both had a firearm on their person, but each was covered by their clothing. Defendant Koenen was not searched as they entered the break room. Special Agent Lese began the interview by again introducing herself and her partner, and showing their credentials. She asked Defendant Koenen if he was comfortable being interviewed in the break room of his place of employment and he responded that he was. Special Agent Lese asked Defendant Koenen

if he knew why they were there and he told her he had an idea. Special Agent Lese then informed

Defendant Koenen that the FBI had a search warrant for his residence in order to seize evidence relating

to the possession and distribution of child pornography. Defendant Koenen responded that he had

assumed that was why they were there. Special Agent Lese then explained to Defendant Koenen that

the interview would be voluntary, that he was free to leave, that he was not under arrest, and that he

would not be arrested at the end of the interview. She provided Defendant with a copy of the search

warrant and asked him if he was willing to talk. Defendant Koenen answered that he was willing to be

interviewed.    The interview began around 7:30 a.m. and lasted less than 2 hours. The door was

generally closed but unlocked. At times, other employees entered the break room. At those times,

Special Agent Lese would stop asking questions and Defendant would talk to the employees briefly.

Special Agent Lese testified that Defendant Koenen was not advised of his <u>Miranda</u> rights because he

was not in custody and was free to leave.

       During the interview Special Agent Lese left the room about two or three times to respond to

calls from agents executing the search warrant at Defendant's residence. Defendant Koenen also left the

room twice during the interview. He first left the room to get a drink when Special Agent Lese left the

room to respond to a phone call. Special Agent Stankevitz did not accompany Defendant Koenen, he

did not know where Defendant Koenen went, and he did not tell Defendant Koenen to return to the

break room. Defendant Koenen left the break room a second time to talk to his wife about the ongoing

search in their residence. Again, Defendant Koenen was not accompanied by either agent and they did

not know where he went when he left the break room. Defendant was not searched either time he left

and returned to the break room.

9

During the interview, Defendant Koenen admitted to having sexual contact with his three daughters. Special Agent Lese told Defendant Koenen that while this was not a federal crime, it was a local crime and she needed to notify local law enforcement. She then called the Robbinsdale Police Department and spoke with Investigator Johnson regarding the Defendant's disclosure of having sexual contact with his daughters. Investigator Johnson stated that he needed to talk to his captain and that he would call her back. The entire conversation took place in front of Defendant Koenen.

Later during the interview, Investigator Johnson called back and spoke with Special Agent Lese, again in front of Defendant Koenen. He indicated that he was interested in speaking with Defendant Koenen and Special Agent Lese asked Defendant if he wanted to speak to the Investigator. Defendant Koenen agreed to talk to Investigator Johnson and used Special Agent Lese's cell phone to give him directions to Undercar Services. Special Agent Lese then completed the interview with Defendant Koenen.

During the interview Defendant appeared to understand the questions asked of him and gave responsive answers. He did not appear intoxicated and asked questions of the agents. He never requested an attorney or to stop the interview, nor did he give any non-verbal indication that he did not want to talk. The agents did not lie, tell Defendant they had evidence they did not have, threaten, or talk about a possible sentence if convicted. The interview was conducted in conversational tones and there were no raised voices. The Defendant seemed relaxed, comfortable, and never agitated. The agents did not physically approach the Defendant throughout the interview and the Defendant was not restrained in any way. At the conclusion of the interview, the agents provided Defendant Koenen with their business cards and prepared to leave. As they were leaving, Investigator Johnson arrived and

knocked on the door of the break room.  Special Agents Lese and Stankevitz thanked the Defendant and left the break room with Investigator Johnson.  Defendant Koenen was not arrested when the agents completed their interview and left.  He was left alone in the break room while the agents and Investigator Johnson spoke outside.

**Defendant Koenen's July 8, 2005 Interview with Investigator Mark Johnson**

Investigator Mark Johnson also testified at the criminal motions hearing.  He stated that at the time of the investigation in this case, he had worked with the Robbinsdale Police Department for 26 years, and as an Investigator for a variety of crimes for 20 years.  Investigator Johnson testified that prior to July 8, 2005, he had received information from Special Agent Lese about a pending search warrant for the targeted Grimes Ave. address regarding violations of child pornography laws.

On July 8, 2005, he drove by the Defendant's residence shortly before 7:00 a.m. and noted that the search warrant had not yet been executed.  He had returned to his office when he received the phone call from Special Agent Lese.  He testified that Special Agent Lese informed him that during the course of interviewing the Defendant, he admitted to having had sexual contact with his daughters.  Investigator Johnson stated that Special Agent Lese then gave the phone to the Defendant who indicated he was willing to talk with the Investigator.

Investigator Johnson testified that he arrived at the Defendant's work and asked for him at the front desk.  He went to the break room and knocked on the door.  Special Agent Lese opened the door and introduced Investigator Johnson to the Defendant.  He then followed Special Agent Lese outside as she was leaving and spoke with her briefly about what she had learned during the interview regarding the Defendant's sexual contact with his daughters.  The conversation lasted between three and five minutes

and Investigator Johnson then returned to the break room to talk with the Defendant.  Investigator Johnson told the Defendant that he would be back to talk to him before he stepped outside with Special Agent Lese, but he did not tell him to stay there.  While Investigator Johnson was outside, he did not know what the Defendant was doing.

When he returned to the break room Investigator Johnson sat down and asked the Defendant if he was willing to talk with him.  Defendant Koenen indicated he was willing to talk to him.  Investigator Johnson explained that the interview and any statement he made was voluntary.  Investigator Johnson testified that no <u>Miranda</u> rights were given because the Defendant was not yet in custody.

The interview lasted approximately 20 minutes and was taped.  (<u>See</u> Gov. Ex. 3).  Investigator Johnson was not dressed in uniform and his firearm was covered by his clothes.  He testified that the tone of the interview was moderate and the Defendant never appeared agitated or intoxicated.  Defendant Koenen did not request an attorney or to stop the interview.  Defendant Koenen appeared to understand the questions and gave responsive answers.  Investigator Johnson did not search the Defendant or the break room and Defendant was never restrained.  He testified that the interview ended when he ran out of questions to ask.

Investigator Johnson testified that he had not made the decision to arrest the Defendant before the interview began.  During the interview the Defendant admitted to having sexual contact with his three minor daughters.  Investigator Johnson made the decision to arrest the Defendant after the interview was completed for the safety of the children.  He testified that, had the Defendant wanted to leave before the interview began, he could have.

**Defendant Koenen's July 22, 2005 Statements**

12

Special Agent Lese next saw Defendant Koenen on July 22, 2005, when she and Special Agent Ted Theisen went to the Hennepin County Jail to place Defendant Koenen under arrest pursuant to a federal arrest warrant.  Special Agent Lese advised Defendant Koenen of the charges against him and transported him to the St. Paul Federal Courthouse.  She sat in the rear of the vehicle with the Defendant and explained the procedures followed in federal court as well as the possibility of a public defender.  During the trip, Special Agent Lese read Koenen his Miranda rights from an FBI form.  She then asked Koenen if he understood his rights and he indicated he did.  She asked him if he was willing to answer questions and he stated he did not know how it would help.  Special Agent Lese asked if she could ask some questions and he could decide which questions not to answer.  Defendant Koenen then agreed to answer some questions and the waiver of rights form was read out loud.

The interview lasted 15 minutes during the transport.  During the interview, Defendant Koenen never indicated that he wanted to stop talking or that he wanted an attorney.  He appeared to understand the questions asked and provided responsive answers.  Special Agent Lese testified that she did not lie to or threaten the Defendant, and the interview was conducted in a neutral conversational tone.

## III. DISCUSSION

Defendant now brings a Motion to Suppress July 8 and July 22, 2005 Statements, Admissions, and Answers (Doc. No. 33), a Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 35), and a Motion to Dismiss Counts I through III for Lack of Nexus with Interstate Commerce.  This Court finds that the Defendant's motions should be denied because the search warrant was supported by sufficient probable cause, the statements were voluntarily made when Defendant was

either not in custody, or in custody and had validly waived his <u>Miranda</u> rights, and Counts I through III contain an adequate nexus with interstate commerce.

**A.      The Search Warrant was Supported by Sufficient Probable Cause**

Defendant Koenen moves to suppress the physical evidence obtained as a result of the July 8, 2005, search at his residence on Grimes Ave. N., in Robbinsdale, MN (Doc. No. 35).   Defendant challenged the search warrant contending that it was not supported by probable cause.   This Court concludes that there was probable cause to issue the search warrant and the evidence found as a result of the search should be admissible.   As such, this Court recommends that Defendant's motion to suppress such evidence be denied.

A search warrant protects an individual's privacy interest in his or her home and possessions against unjustified police intrusions. <u>Steagald v. U.S.</u>, 451 U.S. 204, 213 (1981).  To satisfy the warrant requirement, an impartial judicial officer must assess whether the police have probable cause to make an arrest, to conduct a search, or to seize evidence, instrumentalities, fruits of a crime, or contraband. <u>Warden v. Hayden</u>, 387 U.S. 294, 301-02 (1967).  Probable cause to search is defined as "a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983); <u>see</u> <u>U.S. v. Rankin</u>, 261 F.3d 735, 738-39 (8th Cir. 2001).  There is probable cause to issue a search warrant when the affidavit supporting a search warrant sets forth facts sufficient to create a fair probability that evidence of a crime will be found in the place to be searched. <u>U.S. v. Terry</u>, 305 F.3d 818, 823-24 (8th Cir. 2002).  Whether probable cause exists depends on the totality of the circumstances. <u>Gates</u>, 462 U.S. at 238; <u>see also</u> <u>U.S. v. Gabrio</u>, 295 F.3d 880, 882-83 (8th Cir. 2002).  A court does not evaluate each piece of information independently, but rather

considers all of the facts for their cumulative meaning. U.S. v. Allen, 297 F.3d 790, 794 (8th Cir. 2002).

Because reasonable minds may differ on whether a particular search warrant affidavit establishes

probable cause, preference for warrants is most appropriately effectuated by according great deference

to a magistrate's determination. U.S. v. Leon, 468 U.S. 897, 913-14 (1984).  The Court is to "ensure

that the evidence as a whole provides a substantial basis for finding probable cause to support the

issuance of the search warrant." Terry, 305 U.S. at 823.   Search warrant applications and their

supporting affidavits "should be read with common sense and not in a grudging hyper technical fashion."

United States v. Ryan, 293 F.3d 1059, 1061 (8th Cir. 2002).  Technical errors in particularity alone are

not enough to invalidate a search warrant.   United States v. Valentine, 984 F.2d 906, 909 (8th Cir.

1993) (search warrant valid where there was a typographical error in the address of the residence to be

searched but where the affidavit described the target in detail); see also, United States v. McCain, 677

F.2d 657, 660 (8th Cir. 1982).  Probable cause can be established by the personal observations,

experiences, and training of a police officer or circumstantial evidence. U.S. v. Terry, 305 F.3d 818,

822 (8th Cir. 2002); U.S. v. Wells, 223 F.3d 835, 839 (8th Cir. 2000); U.S. v. Searcy, 181 F.3d 975,

981 (8th Cir. 1999).

In this case, there is adequate evidence set forth in the supporting affidavit to establish probable

cause.  The affidavit in support of the search warrant sets forth the facts and circumstances related to the

undercover investigation into the Newsgroups, Defendant's postings,  and the identification processes of

Defendant's addresses and location.  The affidavit explained how various steps were taken to track

down and confirm the identity of the individual associated with the account "Riker"and the addresses

"sskoe@icgmail.com" and  sskoe112@hotmail.com. Special Agent Lese, the affiant for the search

warrant, has been an FBI Agent for over 13 years.   She was assigned to the Cyber Crime Squad at the time of the investigation and has been the Crimes Against Children Coordinator for the Minneapolis Office of the FBI for almost five years.   Currently, she investigates matters involving crimes against children, including the online sexual exploitation of children, especially as it relates to violations of Title 18 U.S.C. §§2251-2256, which criminalize the possession, receipt and transmission of child pornography.   She has had experience in arrests and searches related to investigations of this matter as well as training in computer crime investigation.   Special Agent Lese also stated that, based on her training, experience, and consultations, she was aware that several things were generally true in cases involving individuals who collect child pornography which would lead her to believe that evidence of such a crime would be found at the Grimes Ave. residence.

That the cover page of the application and the search warrant contained a typographical error, listing the target address as off by one number, does not invalidate the search warrant.   The correct address is listed repeatedly throughout the supporting affidavit and the target address is even described in detail.   Once the error was noted, Special Agent Lese testified that she returned to the Magistrate Judge who had issued the search warrant and swore under oath as to the correct address.

Furthermore, even if it could be found that the search warrant lacked probable cause, evidence found during its execution need not be suppressed when police obtain the evidence through objective good faith reliance on a warrant.   See Leon, 468 U.S. at 920; see also United States v. Rugh, 968 F.2d at 754.   "[E]ven if we thought the warrant affidavit did not establish probable cause, the good faith exception to the warrant requirement would apply because the affidavit was sufficient to allow an officer to reasonably believe probable cause existed."   United States v. Johnson, 219 F3d 790, 791 (8th Cir.

2000) (citing Leon, 468 U.S. at 923).

In the instant case, there is no indication that the issuing judge abandoned his judicial role, that Special Agent Lese knew of the falsity or was reckless with regard to the truth of anything in her affidavit, that the warrant was facially deficient, or that the warrant was so lacking in probable cause as to render official belief in it unreasonable.  See generally Leon, 468 U.S. at 923 (explaining when the good faith exception does not apply); see also United States v. Gibson, 928 F.2d 250, 253-54 (8th Cir. 1991) (finding that the Leon good faith exception applied on a showing of probable cause much less than that exhibited here).

This Court finds that based on the totality of the circumstances and the facts set forth in the supporting affidavit, there was a fair probability that Defendant Koenen violated Title 18 U.S.C. §§ 2252 and 2252A by possessing and distributing child pornography, as well as a fair probability that evidence, fruits and instrumentalities of this crime, would be found at the residence.  As a result, this Court finds that the search warrant at issue was supported by probable cause and Defendant's motion to suppress the evidence should be denied.

**B.     Defendant's Motion to Suppress Confessions or Statements Should Be Denied.**

Defendant Koenen moves to suppress the statements he made during the July 8, 2005 interviews with Special Agent Lese and Investigator Johnson, as well as the statements he made to Special Agent Lese on July 22, 2005.  This Court finds that the statements he made during the July 8, 2005 interviews were voluntarily made while Defendant was not in custody and the presence or absence of Miranda warnings is immaterial.  The statements he made on July 22, 2005, were made voluntarily after Defendant received and validly waived his Miranda rights.  Furthermore, the July 22, 2005

17

statements are not tainted by <u>Missouri v. Seibert</u>'s limitation on "two-step" interrogations as the facts surrounding the Defendant's statements are distinguishable from that case.  Accordingly the statements at issue should be admissible and Defendant's motion to suppress them (Doc. No. 33) should be denied.

> **1.     Defendant Koenen's July 8, 2005 statements to Special Agent Lese and Investigator Johnson should be admissible because they were voluntarily made when he was not in custody.**

Defendant contends that the statements he made to Special Agent Lese and Investigator Mark Johnson were taken in violation of his Fifth Amendment rights as he was in custody and not advised of his rights under <u>Miranda</u>.  This Court disagrees and finds that Defendant was not in custody when he made the statements to Special Agent Lese or Investigator Johnson on July 8, 2005.  As such, <u>Miranda</u> warnings were not necessary and the statements should be admissible.

> **a.     <u>Miranda</u> warnings were not necessary because Defendant Koenen was not in custody.**

The Fifth Amendment privilege against self-incrimination provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  The Supreme Court in <u>Miranda v. Arizona</u>, established protective procedures that safeguard a defendant's Fifth Amendment privilege against the inherently coercive nature of custodial interrogation.  <u>Miranda v. Arizona</u>, 384 U.S. 436, 444 (1966).  However, voluntary statements by a suspect not in custody do not require the protection of the <u>Miranda</u> warnings.  <u>Id.</u> at 478-479.  The obligation to administer the <u>Miranda</u> warnings only attaches "where there has been such a restriction on a person's freedom as to render him 'in custody.'" <u>Stansbury v. California</u>, 511 U.S. 318, 322 (1994), <u>citing</u> <u>Oregon v.</u>

Mathiason, 429 U.S. 492, 495 (1977); See also Illinois v. Perkins, 496 U.S. 292, 296 (1990).

Under Miranda, custodial interrogation involves questioning initiated by law enforcement officers after an individual is taken into custody, or otherwise "deprived of his freedom of action in any significant way." Mathiason, 429 U.S. at 494. Whether a defendant is in custody is determined by examining the objective circumstances of the situation, using the perspective of a reasonable person in the suspect's position. Berkemer v. McCarty, 468 U.S. 420, 442 (1984); U.S. v. Johnson, 64 F.3d 1120, 1125 (8th Cir. 1995), cert. denied, 116 S.Ct. 971 (1996). The subjective views of the interrogating officers or the person being questioned should not be considered in determining whether a defendant was in custody. Stansbury, 511 U.S. at 322. Courts must consider the totality of the circumstances when making this determination, but the ultimate question is "whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest." Id., quoting California v. Beheler, 463 U.S. 1121, 1125 (1983); quoting Mathiason, 429 U.S. at 495.

The Eighth Circuit stated in United States v. Griffin, 922 F.2d 1343, 1347 (8th Cir. 1990), that "the relevant factors to be considered in making a determination of custody include an accused's freedom to leave the scene, and the purpose, place and length of the interrogation." The accused's freedom of action during the interrogation is a critical factor, while the remaining factors "have inconclusive, independent relevance to the determination of custody." Id. From these factors, a six-element test for determination of custody has been formed:

> (1)    Whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest;
> (2)    Whether the suspect possessed unrestrained freedom of movement during questioning;
> (3)    Whether the suspect initiated contact with authorities or voluntarily acquiesced to official

requests to respond to questions;

(4)     Whether strong arm tactics or deceptive stratagems were employed during questioning;

(5)     Whether the atmosphere of the questioning was police dominated; and

(6)     Whether the suspect was placed under arrest at the termination of the questioning.

Id. at 1349.

Applying Griffin to the present case, it is apparent that, under the totality of the circumstances, Defendant Koenen was not in custody when he made the July 8, 2005 statements to Special Agent Lese or Investigator Johnson, and Miranda warnings were not necessary.

> **i.     The July 8, 2005 interview with Special Agents Lese and Stankevitz**

First, Defendant Koenen was informed before the interview started that the interview was voluntary, that he was free to leave at any time, that he was not under arrest, and that he would not be arrested at the end of their interview.

Second, there were no restraints on Defendant's freedom of movement during the interview. There is no indication that he was physically restrained and he was never told he could not move. United States v. Mottl, 946 F.2d 1366, 1370 (8th Cir. 1991) (restraint of movement factor weighs in favor of non-custodial setting where agents never told subject to remain in place). The break room was not locked and Defendant Koenen was not handcuffed or otherwise physically restrained during the interview. Special Agent Lese left the break room on at least three occasions and never instructed Defendant to stay in the break room. Defendant himself was able to leave the break room unaccompanied at least twice, one time to get a drink, and the second time to call his wife who was upset during the execution of the search warrant at their residence. Defendant was given a choice to not talk with the agents, to chose a different location, and he was told that the interview was purely

20

voluntary.

Third, although Defendant Koenen did not initiate the contact with the FBI, he voluntarily acquiesced to Special Agent Lese's request to answer questions. He was told that questioning was voluntary and he chose to stay and answer questions.

Fourth, there were no strong-arm tactics or deceptive stratagems employed during the questioning. Special Agent Lese testified that during the interview the agents were not in uniform and weapons were not displayed. The agents did not make any threats or promises, or engage in any "unlawful coercive interrogation techniques." United States v. Galceran, 301 F.3d 927, 929 (8th Cir. 2002) (interview non-custodial when subject voluntarily appeared at station at the request of police, interviewed for 90 minutes in a room with no windows by two officers in casual clothes but with service weapons).

Fifth, this Court finds that the atmosphere of the interview was not police dominated. The interview took place at Defendant's place of business. Special Agent Lese asked before he entered the building if he was willing to talk with her and he indicated he was. He directed the agents to the break room. Upon entering, he was asked if he was comfortable conducting the interview in the break room of his employment. He had chosen the break room and indicated that he was comfortable there. There were only two agents at the interview and Special Agent Lese conducted most of the questioning. Neither of the agents were in uniform, and their firearms were not visible. At times, other employees entered the break room, at which time the questioning stopped, and Defendant chatted with the employees. The surroundings in the break room at Defendant's place of employment, a place that Defendant was familiar with and free to leave, are "not indicative of the type of inherently coercive

setting that normally accompanies a custodial interrogation." See United States v. Helmel, 769 F.2d 1306, 1320 (8th Cir. 1985).

Finally, Defendant was not placed under arrest at the end of the interview with Agents Lese and Stankevitz. This factor weighs in favor of a finding that the interview was non-custodial. When the interview was done, the agents thanked him for his time and gave him their business cards. As they were preparing to leave, Investigator Johnson, whom Defendant had separately agreed to talk with, arrived. Special Agents Lese and Stankevitz left and Defendant remained in the break room. He was not told to stay there or to not move.

### ii.     The July 8, 2005 interview with Investigator Mark Johnson

First, Defendant Koenen was informed before the interview started that the interview was voluntary, that he was free to leave at any time, that he was not under arrest, and not being detained. At the end of the interview, Defendant Koenen himself indicated that the interview had been voluntary and the information given on his own free will.

Second, there was no restraint on Defendant's freedom of movement during the interview. There is no indication that he was physically restrained and he was never told he could not move. United States v. Mottl, 946 F.2d 1366, 1370 (8th Cir. 1991) (restraint of movement factor weighs in favor of non-custodial setting where agents never told subject to remain in place). When Investigator Johnson followed Special Agent Lese outside he did not tell the Defendant to remain in the break room. He testified that he did not know where Defendant was when he went outside. Again, the break room was not locked and Defendant Koenen was not handcuffed or otherwise physically restrained during the interview. The interview lasted only 20 minutes and Defendant never asked to leave or stop the

questioning.  Defendant was given a choice to not talk with Investigator Johnson, he was told that the interview was purely voluntary, and he indicated that he understood the interview to be voluntary.

Third, although Defendant Koenen did not initiate the contact with Investigator Johnson, he voluntarily acquiesced to meeting him in the break room and answering his questions.  He provided the Investigator with directions to his place of employment.  He was told that questioning was voluntary and he chose to stay and answer questions.

Fourth, there were no strong-arm tactics or deceptive stratagems employed during the questioning.  Investigator Johnson testified that he was not in uniform during the interview and his firearm was never displayed.  The interview lasted only 20 minutes and Investigator Johnson did not make any threats or promises, or engage in any "unlawful coercive interrogation techniques."  United States v. Galceran, 301 F.3d 927, 929 (8th Cir. 2002) (interview non-custodial when subject voluntarily appeared at station at the request of police, interviewed for 90 minutes in a room with no windows by two officers in casual clothes but with service weapons).

Fifth, this Court finds that the atmosphere of the interview was not police dominated.  The interview took place at Defendant's place of business.  It was Defendant's choice to conduct the interview in the break room of his place of employment, and he had previously been asked if he was comfortable doing so.  When asked if he was willing to talk with Investigator Johnson he indicated he was and provided the Investigator with directions.  Investigator Johnson was alone with the Defendant, he was not in uniform, and his firearm was not displayed.  Again, the surroundings in the break room at Defendant's place of employment, a place that Defendant was familiar with and free to leave, are "not indicative of the type of inherently coercive setting that normally accompanies a custodial interrogation."

See United States v. Helmel, 769 F.2d 1306, 1320 (8th Cir. 1985).

Finally, although Defendant was placed under arrest at the end of the interview with Investigator Johnson, this is the only factor that weighs in favor of finding that the interview was custodial. Defendant argues that the interviews should be seen as a whole single interview and Investigator Johnson knew that he was going to arrest the Defendant before the interview began. This Court sees the interviews as two separate interviews conducted by separate law enforcement agencies. It was Defendant's choice to conduct the second interview with Investigator Johnson at the same place and directly after the interview with the FBI agents. Furthermore, the ultimate question of "whether there was a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest" is determined by examining the objective circumstances of the situation, using the perspective of a reasonable person in the suspect's position, not the subjective views of the interrogating officers. Stansbury, 511 U.S. at 322.

The facts of this case demonstrate that a reasonable person in Koenen's position would have believed that his participation in the interviews was voluntary, that he was not under arrest, and that his freedom of movement was not restrained. Based on the totality of the circumstances, it is evident that Defendant Koenen was not deprived of his freedom of movement in any significant way during his July 8, 2005 interviews with Special Agents Lese and Stankevitz, or with Investigator Johnson. None of the factors support a finding of custody with regards to his interview with the FBI agents. That Investigator Johnson arrested the Defendant at the end of his interview does not overrule the fact that all other factors fall in favor of a finding that the interview with him was non-custodial as well. Defendant's Fifth Amendment rights were not violated because he was not in custody when he made the July 8, 2005 statements, and Miranda warnings were not necessary.

24

**b.     Defendant Koenen's statements on July 8, 2005, were voluntarily made.**

Even statements that are not the product of custodial interrogation will be inadmissible if they were not made voluntarily.  To determine whether a statement was provided voluntarily and not in violation of a defendant's due process rights, a court must ask whether, in the totality of the circumstances, law enforcement officials obtained the evidence by overbearing the will of the accused. Haynes v. State of Wash., 373 U.S. 503, 513-14 (1963); Wilson v. Lawrence County, 260 F.3d 946 (8th Cir. 2001).  The question of whether a statement is voluntary focuses on: (1) the conduct of law enforcement officials in creating pressure; and (2) the suspect's capacity to resist that pressure.  Mincey v. Arizona, 437 U.S. 385, 399-401 (1978) (confession involuntary when police interrogation of hospitalized suspect overwhelmed suspect's free will); Davis v. State of N.C., 384 U.S. 737, 752 (1966) (confession involuntary when police repeatedly interrogated jailed suspect held incommunicado over 16-days).  The coercion inducing the involuntary statement must be done by a state actor. Colorado v. Connelly, 479 U.S. 157, 170 (1986).  Among other factors commonly considered in assessing the totality of the circumstances surrounding testimonial evidence supplied by a defendant are: (1) the location of the questioning; (2) whether Miranda warnings were given; and (3) whether the accused initiated contact with law enforcement officials. See e.g. U.S. v. Wolk, 337 F.3d 997, 1007 (8th Cir. 2003) (statements made by suspected child pornography possessor and distributor during execution of search warrant admissible without Miranda warning because not in custody and questioning took place at suspects home, he was told he was free to leave, not under arrest, and that he didn't have to answer questions);  Battle v. Dalo, 19 F.3d 1547, 1563-64 (8th Cir. 1994).

In this case, under the totality of the circumstances, Defendant Koenen's statements during both

the July 8, 2005 interviews were voluntarily made.  Defendant was specifically told the interviews were voluntary, he did not have to answer any questions, and he was free to leave. Defendant chose the location of both interviews.  During the interview with Special Agent Lese, there were only two agents in the break room.  During the interview with Investigator Johnson there was only one.  Neither the agents nor Investigator Johnson were in uniform or had their weapons displayed.  Although Defendant Koenen was not given <u>Miranda</u> warnings, such warnings were not necessary because it was clear he was not in custody and could leave the interview at any time.  Defendant Koenen's statements were not induced by threats or promises, and there is no evidence that any of the law enforcement officers did anything to overbear his will in any way.  Nor is there anything in the record to indicate that the Defendant was particularly susceptible to coercion.  Furthermore, the first interview lasted less than two hours and the second only 20 minutes, neither of which qualify as an attempt to overcome Defendant's will.  <u>Wolk</u>, 337 F.3d at 1007 (An hour and twenty minute interview is "certainly not a marathon session designed to overcome [defendant's] will.").  Again, it was Defendant's choice to conduct the second interview in the same location and directly after the first interview had been completed.

This Court concludes that Defendant Koenen's statements on July 8, 2005, should be admissible because they were made voluntarily while the Defendant was not in custody.  As such, the <u>Miranda</u> warnings were not necessary and the Defendant's motion to suppress such statements (Doc. No. 33) should be denied.

**2.    Defendant Koenen's statements on July 22, 2005, should be admissible because**

**they were made voluntarily after he received and validly waived his <u>Miranda</u> rights, and the interview was not a "two-step" interrogation.**

Defendant Koenen also moves to suppress the statements he made on July 22, 2005, after his arrest and during his transport. This Court finds that Defendant's statements should not be suppressed because they were voluntarily made after he was properly informed of his <u>Miranda</u> rights, and knowingly, voluntarily, and intelligently waived them. Furthermore, the facts surrounding the interview on July 22, 2005, are distinguishable from <u>Missouri v. Siebert</u>, and do not qualify as a "two-step" interrogation.

### a. Defendant Koenen was informed of his <u>Miranda</u> rights on July 22, 2005, and knowingly, voluntarily, and intelligently waived them.

Before any evidence obtained as a result of a custodial interrogation may be used against a defendant at trial, the Fifth Amendment requires that a defendant in custody and subject to interrogation by law enforcement agents be advised of his constitutional rights and make a knowing, intelligent and voluntary waiver of those rights. <u>Miranda</u>, 384 U.S. at 444.

A suspect in custody must be informed that he has the following rights: (1) the right to remain silent; (2) that his statements may be used against him in a court of law; (3) that he has the right to an attorney; and (4) that if he cannot afford an attorney, one will be appointed. <u>Id.</u> at 444, 478-479. Law enforcement officials must use either this formulation of the warnings or "other procedures [that] are at least as effective in apprising accused persons of their right of silence and in assuring a continuous opportunity to exercise it." <u>Id.</u> at 467. Suspects need to be informed of these <u>Miranda</u> rights before questioning begins. <u>Id.</u> at 469-70. Statements elicited from a suspect in violation of <u>Miranda</u> are inadmissible. <u>Stansbury</u>, 511 U.S. at 322. After the warnings are given, if the suspect indicates that he

wishes to assert these rights, the interrogation must stop.  Miranda, 384 U.S. at 473-74.

After being informed of their Miranda rights, a suspect's waiver of their Fifth Amendment privilege against self-incrimination is only valid if it is voluntarily, knowingly, and intelligently made. Id. at 444; U.S. v. Syslo, 303 F.3d 860, 866 (8th Cir. 2002).   It is the Government's burden to show by a preponderance of evidence that the suspect's waiver meets these standards.  Miranda, 384 U.S. at 473; Connelly, 479 U.S. at 168 (1986).  A waiver is knowing if it is "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Moran v. Burbine, 475 U.S. 412, 421 (1986).  It is voluntary if it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." Id.  While courts will not presume a waiver from a defendant's silence or subsequent confession alone, an express waiver is not necessary.  North Carolina v. Butler, 441 U.S. 369, 373, 375-76 (1979) (explicit waiver not necessary to show defendant waived right to remain silent when defendant volunteered incriminating statements); U.S. v. Duque, 62 F.3d 1146, 1152-53 (9th Cir. 1995)(valid waiver inferred because, after having been given Miranda rights and asked if he was "of mind to speak with officers," defendant made incriminating statements).

On July 22, 2005, Defendant Koenen was properly informed of his Miranda rights, and validly waived them.  Defendant had been arrested and was being held in the Hennepin County Jail.  Special Agent Lese and her partner had placed Defendant Koenen under arrest pursuant to a federal arrest warrant and were transporting him to the St. Paul Federal Courthouse.  The interview took place in the vehicle during transport and lasted 15 minutes.  As he was in custody, he was properly informed of his Miranda rights by Special Agent Lese at the start of the interview.  He was asked if he understood his rights and he indicated he did.  Although Defendant indicated he was not sure how it would help if he

answered questions, he agreed to talk with Agent Lese and the waiver of rights form was read out loud. Defendant proceeded to answer questions and never indicated he wanted to stop talking or that he wanted an attorney. There is nothing in the evidence to suggest that Defendant's waiver was made unknowingly or involuntarily.

      **b.**      **Defendant Koenen voluntarily made the statements of July 22, 2005.**

Regardless of informing a suspect of their rights and receiving a valid waiver of those rights, a statement or confession that is involuntarily made by a suspect is violative of his or her due process rights. Haynes, 373 U.S. at 513-514; U.S. v. Kime, 99 F.3d 870, 878-79 (8th Cir.1996). As discussed above, if a statement is induced by threats, promises, or in any other way in which the suspect's will is overborne, the statements are not voluntary and are inadmissible. Haynes, 373 U.S. at 513; See Supra, Section B(1)(b).

This Court finds that Defendant Koenen was not coerced into making his statements on July 22, 2005. Rather, the statements were voluntarily made after properly receiving and validly waiving his Miranda rights. Defendant Koenen was in custody at the time the statements were made. He was informed of his Miranda rights, indicated he understood those rights, and validly waived them by agreeing to talk without an attorney present. There is nothing in the record to suggest that the agents conduct created any undue pressure on Defendant Koenen, that he was particularly susceptible to coersion, or that his will was in any way overborne.

      **c.**      **The Miranda warnings Defendant Koenen received were effective.**

Defendant Koenen contends that the Miranda warnings he received on July 22, 2005, were ineffective, and that the Supreme Court's opinion in Missouri v. Seibert, 124 S.Ct. 2601 (2004),

compels the Court to suppress the statements he made during the transport to St. Paul.  Defendant argues that his statements made during the transport to St. Paul should be suppressed because the tactic of interviewing him multiple times constitutes a "question first" practice or "mid-interrogation <u>Miranda</u>", and makes it unreasonable to conclude that the subsequent <u>Miranda</u> warnings during the transport functioned effectively.  This Court finds that the facts in this case are distinguishable from the facts in <u>Seibert</u>, and the statements at issue are not tainted by any illegal interrogation process.

The situation before the Supreme Court in <u>Seibert</u> was a "question-first" police technique of not giving <u>Miranda</u> warnings until a suspect had confessed and then obtaining the same confession after the suspect had waived his or her <u>Miranda</u> rights at a later time.  <u>Id.</u>  In that case, a police officer intentionally withheld <u>Miranda</u> warnings to first question the Defendant and obtain a confession.  After a twenty minute break, the police officer gave the Defendant her <u>Miranda</u> warnings, and obtained a signed waiver.  He resumed the same line of questioning and confronted the Defendant with her pre-warning statements in order to elicit the same statements and confession.  The Supreme Court struck down this practice and held that <u>Miranda</u> warnings, given mid-interrogation, after defendant had already given an un-warned confession, were ineffective, and thus, a second confession repeated after warnings were given was inadmissible at trial. <u>Id</u>. at 2605.  The <u>Seibert</u> case failed to produce a majority opinion, but it is clear from the plurality and concurrence, that the Court was concerned with the use of a two-stage process deliberately designed to circumvent the protections of the Fifth Amendment <u>Miranda</u> warnings.  Moreover there is nothing in <u>Seibert</u> to suggest that the Court was overruling <u>Oregon v. Elstad</u>, 470 U.S. 298 (1985).

Here, unlike in <u>Seibert</u>, there is no evidence the agents or Investigator Johnson intentionally

withheld <u>Miranda</u> warnings during the first two interviews, questioned the Defendant to elicit a confession, and then tried to elicit the same statements after <u>Miranda</u> had been given during the July 22, 2005 interview.  There is no evidence that the questioning done at any of the interviews was undertaken to deliberately circumvent the protection of <u>Miranda</u>.  Indeed, unlike the facts in <u>Seibert</u>, this Court has found in this case that the first two interviews did not constitute custodial interrogations as the Defendant was not under arrest or in custody, and <u>Miranda</u> warnings were not necessary.  The statements Defendant made during the first two interviews would be admissible regardless of the presence or absence of <u>Miranda</u> warnings.

Furthermore, in <u>Seibert</u>, after obtaining a confession, the officer took a twenty minute break, read the defendant her <u>Miranda</u> rights, and confronted the defendant with statements she had previously made to get her to repeat her confession.  In this case, fourteen days passed between the first two interviews and the third.  At the time Defendant made the July 22, 2005 statements, he was already in jail and it was further made clear to him that he was being arrested pursuant to federal charges.  There is no evidence that Special Agent Lese confronted Defendant Koenen with any of his previous statements in order to purposefully get him to repeat his confession.  Furthermore, such a substantial break in time and circumstances between the earlier interviews and the <u>Miranda</u> warning serves to ensure that a reasonable person in the Defendant's position "would understand the import and effect of the <u>Miranda</u> warning and waiver."  <u>Id.</u>, at 2604-05.

This Court finds that there is no evidence that the law enforcement agents in this case deliberately employed a two-stage "question-first" technique to circumvent the protections of <u>Miranda</u> warnings.  As such, the <u>Seibert</u> decision does not require the suppression of the statements Defendant

31

made during transport on July 22, 2005.  In this case, the <u>Miranda</u> warnings the Defendant received were effective and his statements were voluntarily made after validly waiving his Fifth Amendment rights.

**C.     Defendant's Motion to Dismiss Counts I through III of the Indictment for Lack of Nexus with Interstate Commerce Should be Denied.**

Defendant argues that Counts I through II of the Indictment should be dismissed for lack of federal jurisdiction.  Specifically, Defendant contends that the allegations contained in the  three counts of Production of Child Pornography lack a sufficient nexus with interstate commerce pursuant to <u>United States v. Lopez</u>, 514 U.S. 549 (1995) and <u>United States v. Morrison</u>, 529 U.S. 598, 610-13.

Counts I through III each charge Defendant Koenen with producing child pornography in violation of Title 18 U.S.C. §§ 2251(b) and (e).  Section 2251(b) states:

> Any parent, legal guardian, or person having custody or control of a minor who knowingly permits such minor to engage in, or to assist any other person to engage in, sexually explicit conduct for the purpose of producing any visual depiction of such conduct shall be punished as provided under subsection (e) of this section, if such parent, legal guardian, or person knows or has reason to know that such visual depiction will be transported in interstate or foreign commerce or mailed, if that visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer, or if such visual depiction has actually been transported in interstate or foreign commerce or mailed.

Counts I through III each allege that Defendant Koenen used a Canon Powershot S50 digital camera to manufacture images of child pornography.  These counts further allege that the Canon Powershot S50 traveled through interstate commerce.  There is no dispute that the camera allegedly used to produce the visual depictions of child pornography did indeed travel through interstate commerce.  Defendant merely argues that such transport through interstate commerce constitutes an inadequate impact on interstate commerce to invoke federal jurisdiction through the Commerce Clause of Article I, Section 8 of the

United States Constitution.

The Supreme Court in <u>Lopez</u> established that Congress has the authority under the Commerce Clause to regulate the channels and instrumentalities of interstate commerce, as well as "activities that substantially affect interstate commerce."  514 U.S. at 558-59.  The Court in <u>Morrison</u> set forth four factors for a court to consider when determining whether activity regulated by a statute substantially affects interstate commerce: (1) whether the regulated activity is economic in nature; (2) whether the statute contains an express jurisdictional element which limits its application to activities with an "explicit connection with or effect on interstate commerce"; (3) whether the statute or its legislative history contains express congressional findings that the activity affects interstate commerce; and (4) whether the link between the activity regulated in the statute and a substantial effect on interstate commerce is attenuated.  529 U.S. at 610-13.

The Eighth Circuit has consistently, before and after the Court's ruling in <u>Morrison</u>, upheld the constitutionality of prosecutions under the child pornography statute section 2251.  See <u>United States v. Bausch</u>, 140 F.3d 739 (8th Cir. 1998) (finding that use of a camera, that had been transported through interstate commerce, to produce child pornography constituted substantial impact on interstate commerce to justify prosecution); <u>United States v. Hoggard</u>, 254 F.3d 744 (8th Cir. 2001) (upheld conviction under 2251(b) for child pornography photographs produced with materials that had been shipped in interstate commerce); <u>United States v. Hampton</u>, 260 F.3d 832 (8th Cir. 2001)(upheld conviction for production and possession of child pornography where defendant used videotapes which were manufactured outside the state because the materials had been transported in interstate commerce); <u>United States v. Mugan</u>, 394 F.3d 1016 (8th Cir. 2005) (conviction for child pornography

upheld where defendant used a digital camera and memory stick that were transported through interstate commerce).

The Eighth Circuit in <u>Hoggard</u> specifically distinguished <u>Lopez</u> and <u>Morrison</u> on the grounds that, in neither of those cases did, the statute at issue "contain an express jurisdictional element, requiring the government to prove, in each case, a concrete connection with interstate commerce." <u>Hoggard</u>, 254 F.3d at 746. Such an element exists in the child pornography statute section 2251 as the government must prove, as relevant to this case, that the child pornography was produced with materials transported in interstate commerce. The Eighth Circuit, in <u>Hampton</u>, specifically rejected the defendant's reliance on <u>Lopez</u> and <u>Morrison</u> and held that statutes criminalizing production and possession of child pornography using materials transported in interstate commerce did not exceed Congress' commerce clause authority. Most recently, the Eighth Circuit reaffirmed, in <u>Mugan</u>, the constitutionality of federally criminalizing the production of child pornography when it is produced with materials transported in interstate commerce. 394 F.3d at 1021-23. The court went beyond the jurisdictional element factor set forth in <u>Morrison</u>, and also found support for the statute within its underlying congressional findings as well as the growing link between interstate commerce and child pornography. <u>Id.</u>

This Court is unable to, and finds no reason to, sway from the strongly established and ongoing Eighth Circuit precedence in this matter. There is no dispute that the camera Defendant Koenen allegedly used in the production of child pornography was transported through interstate commerce. As such, the nexus between the allegations in Counts I through III and interstate commerce is sufficiently established to justify federal jurisdiction. The Defendant's motion to dismiss those counts should be denied.

## IV. RECOMMENDATION

Based upon all the files, records and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1.     Defendant Koenen's Motion to Suppress July 8 and July 22, 2005 Statements, Admissions, and Answers (Doc. No. 33) should be **DENIED**;

2.     Defendant Koenen's Motion to Suppress Evidence Obtained as a Result of Search and Seizure (Doc. No. 35) should be **DENIED**; and

3.     Defendant Koenen's Motion to Dismiss Counts I - III for Lack of Nexus with Interstate Commerce (Doc. No. 36) should be **DENIED**.


Dated:   November 21, 2005     s/Susan Richard Nelson

SUSAN RICHARD NELSON
United States Magistrate Judge


Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **December 8, 2005**, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under the rules shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.  Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by (same date as above), 2005 a complete transcript of the hearing.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.